UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

GREGORY PATTON,

    Defendant.
_____/

Case No. 20-cr-20393

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RELEASE ON BOND [#17]**

### I. INTRODUCTION

On August 19, 2020, Defendant Gregory Martez Patton was charged in a criminal complaint for unlawful distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See* ECF No. 1. Defendant was subsequently charged in an indictment with one count of unlawful distribution and one count of felon in possession on September 2, 2020. *See* ECF No. 12. On August 21, 2020, a detention hearing was held before Magistrate Judge Elizabeth A. Stafford, who ordered Defendant detained pending trial. *See* ECF No. 19, PageID.80.

Presently before the Court is Defendant's Motion for Release on Bond, filed on December 18, 2020. ECF No. 17. The Government filed a Response in Opposition on January 8, 2021. ECF No. 22. A hearing on this matter was held on

1

January 25, 2021. For the reasons that follow, the Court will DENY Defendant's Motion for Release on Bond [#17].

## II. BACKGROUND

### A. The Offense

In July 2020, agents with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") conducted an undercover narcotics operation involving an ATF Confidential Informant and Defendant Gregory Patton. ECF No. 1, PageID.4. The Confidential Informant communicated with Defendant via text messages and phone calls about the purchase of two "eight-balls," or approximately seven grams of crack cocaine. *Id.* On July 30, 2020, Defendant, the Confidential Informant, and an undercover ATF Special Agent met at 24300 West McNichols Road in Detroit, Michigan. *Id.* at PageID.5.

Over the course of the day, Defendant allegedly provided the Confidential Informant and Special Agent with over seven grams of suspected crack cocaine for $700. *Id.* at PageID.5-6. During the transaction, Defendant also asked if the agents were interested in purchasing various firearms "he had access to," including a .40 caliber pistol, a 10mm pistol, a Ruger 9mm pistol, and a .380 caliber firearm. *Id.* at PageID.6-8.

Defendant and the Undercover Agent exchanged text messages over the next week concerning the total weight of the cocaine and the potential purchase of a

firearm. *Id.* After some back and forth about the availability of certain firearms, the Undercover Agent purchased a Bryco 58, .380 Auto caliber, semi-automatic pistol from Defendant on August 10, 2020. *Id.* at PageID.8-9. Defendant also sold the agent over fifty rounds of .380 Auto caliber ammunition. *Id.* at PageID.9-10.

Defendant was subsequently arrested and charged by complaint with felon in possession and distribution of a controlled substance. He appeared on August 21, 2020 and was ordered detained pending trial.

### B. Defendant's Background

Defendant Gregory Patton is thirty-one years old and born in Carrollton, Georgia. He has lived in Redford Charter Town, Michigan with his girlfriend, Ciara Pettway, since 2016. Defendant and Ms. Pettway have four children who live at their home in Detroit. Defendant has a fifth child who lives with her mother in Georgia. Patton reported that he maintains a close relationship with his mother, who also lives in Detroit, and speaks with her weekly via telephone. Prior to his arrest, Defendant was employed with Two Men and a Truck.

Defendant does not report any history of medical issues or mental illness. He reports that he first began experimenting with marijuana at age fifteen. He reports daily use of marijuana. Defendant denies use of any other drug or alcohol besides social drinking. He was ordered to undergo substance use treatment in 2017 as part of a prior state court sentence.

Defendant has a history of several arrests and outstanding warrants, beginning at the age of eighteen. The majority of Defendant's convictions are misdemeanor convictions. Several of his convictions include those for firearm offenses and probation violations. Defendant has two outstanding warrants for failures to appear in both the 36th District Court and the state of Georgia.

**C. Detention Hearing**

Prior to his detention hearing, Pretrial Services recommended that Defendant be detained pending trial. Defendant appeared before Magistrate Judge Elizabeth A. Stafford on August 21, 2020. ECF No. 19. Magistrate Judge Stafford found that detention was warranted under the circumstances of Defendant's case. *Id.* at PageID.80.

In her determination, Magistrate Judge Stafford emphasized her concern about Defendant's danger to the community if released. The Magistrate Judge pointed to Defendant's pattern of behavior and his prior convictions relating to the same conduct: felony weapons possession and controlled substances distribution. *Id.* Additionally, the Magistrate Judge noted that Defendant had been on probation at the time of his arrest for similar offenses, thus weighing against release. *Id.* To this point, Magistrate Judge Stafford stated:

> So he's engaged in . . . firearms trafficking as well as drug trafficking, and he was not dissuaded from engaging in that conduct even though he was under supervision, even though he had violated probation with new criminal conduct.

*Id.* While Magistrate Judge Stafford found that, under 18 U.S.C. § 3142(e)(2), Defendant presented evidence sufficient to rebut the presumption of flight risk, she did not believe that he had overcome the presumption of dangerousness. Further, the Magistrate Judge found that the Government had established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. *Id.* She thus ordered Defendant to be detained pending trial. *Id.*

### III. LEGAL STANDARD

Title 18 U.S.C. § 3145(b) allows the district judge to review an order detaining a defendant. It is a *de novo* hearing. *United States v. Jones*, 804 F. Supp. 1081 (S.D. Ind. 1992); *U.S. v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). "The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Generally, in order for a defendant to be detained, the government must establish the (1) "risk of flight by a preponderance of the evidence" or (2) "dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). Pre-trial detention shall be ordered only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

5

In determining whether there are conditions which will reasonably assure the appearance of the person and the safety of the community, the district court must make findings based on the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g).

### IV. ANALYSIS

**A. The Parties' Arguments**

In his present Motion, Defendant moves this Court, pursuant to 18 U.S.C. § 3145(b), to revoke the Magistrate Judge's order of detention and grant him bond. ECF No. 17. He argues that he poses neither a danger to the community nor a risk of flight under 18 U.S.C. § 3142(c). *Id.* at PageID.55. Defendant emphasizes that various conditions can be imposed to alleviate concerns, including that (1) he live with Ms. Pettway in Redford Charter Town, Michigan in a home where their four shared children live; (2) he quarantine in a room in the Redford home while he recovers from COVID-19; (3) Ms. Pettway could serve as his third party custodian; (4) he be placed on a GPS tether; and (5) he be placed under house arrest. *Id.* at PageID.54-55.

The Government argues that Defendant is both a danger to the community and a flight risk. ECF No. 22, PageID.106. In its Response brief, the Government asserts

that Defendant cannot rebut the presumption of dangerousness against him and that the factors set forth in 18 U.S.C. § 3142(g) weigh heavily in favor of detention pending trial. *Id.* at PageID.107. Further, the Government emphasizes that Defendant was on probation for similar narcotics and firearm convictions prior to his arrest in this case. *Id.* at PageID.109. The Government additionally clarifies that Defendant's prior COVID-19 diagnosis is not sufficient grounds to justify his release. *Id.* at PageID.190-110.

### B. The Bail Reform Act

Under § 3142 of the Bail Reform Act, there are numerous offenses for which a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," including the crimes described in 18 U.S.C. § 3142(f)(1). Here, Defendant was initially charged on a criminal complaint, and later indicted, for a violation of 21 U.S.C. § 841(a)(1). ECF Nos. 1, 12. There is thus a presumption that Defendant should be detained.

Magistrate Judge Stafford determined at the detention hearing that Defendant presented evidence sufficient to rebut the presumption "that he will fail to appear as directed or that he will flee," but she did not "believe that he has overcome the presumption that he remains a danger to the community." ECF No. 19, PageID.79. She went on to find that the factors under 18 U.S.C. § 3142(g) support detention. *Id.*

at PageID.80. In weighing all four factors under § 3142(g), this Court also finds that the evidence establishes by clear and convincing evidence that no condition, or combination of conditions of release, will reasonably assure the safety of other persons and the community.

### 1. Nature and Characteristics of the Charged Offense

The first factor the Court must consider is the nature and circumstances of the offenses charged against Defendant. The Government argues that the offenses for which Defendant is charged support detention. Specifically, the Government asserts that distribution of a controlled substance, Count II, carries a maximum statutory penalty of twenty years' imprisonment. ECF No. 22, PageID.105.

The full extent of the nature and circumstances of the charged offenses is unquestionably serious. Defendant was arrested after selling ATF agents over seven grams of crack cocaine and a .380 caliber firearm. The Government also notes that Defendant's offering of multiple pistols during the firearms sale troublingly indicates that he may have "had access to a cache of firearms." *Id.* at PageID.108. Further, Defendant's arrest occurred while he was on probation for previous drug and firearm offenses. This first factor thus weighs in favor of Defendant's detention.

### 2. The Weight of the Evidence

The second factor the Court must consider is the weight of the evidence against Defendant. "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608

8

F.3d 939, 948 (6th Cir. 2010). Defendant does not address this factor in his Motion. The Government argues that the weight of the evidence of Defendant's dangerousness is strong in light of his conduct during the offenses, his admission of the narcotics sale, and his prior criminal convictions.

The Court is inclined to agree with the Government's argument. At the detention hearing, Magistrate Judge Stafford highlighted that Defendant's charges present a broad danger to the community beyond just the risk of violence. *See* ECF No. 19, PageID.79. While Defendant argued that the ATF agents did not find any firearms during their search of his home and that Defendant was compliant during his arrest, these facts do not change the dangerousness of the underlying alleged conduct. The Sixth Circuit has repeatedly affirmed that "drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010).

Defendant further asserts that he could be placed on a GPS tether for Pretrial Services to accurately monitor his movement. ECF No. 17, PageID.55. While the Court finds that such conditions may mitigate a concern for Defendant's future court appearances, such conditions do not ease the Court's concern of his dangerousness. Further, the fact that Defendant was already on probation for similar offenses weighs heavily towards evidence of dangerousness. In sum, the second factor also favors Defendant's detention.

### 3. History and Characteristics of the Defendant

The third factor requires that the Court review the history and characteristics of the Defendant, which are statutorily separated into two categories. The first category examines the Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The second category asks "whether, at the time of the current offense or arrest, [Defendant] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B).

Here, Defendant was born in Carrollton, Georgia, but has spent most of his life in Michigan and has lived in Redford Charter Town, Michigan with his long-term girlfriend since 2016. She has agreed to serve as his third-party custodian and would allow him to quarantine in their shared home if released. Defendant also asserts that he has worked for Two Men and a Truck for the past year and could resume gainful employment upon release.

The Government directs the Court to Defendant's criminal history, which includes prior convictions for multiple drug and firearm offenses. ECF No. 22, PageID.109. The Government emphasizes that while Defendant was under court

supervision for narcotics and firearm-related offenses, Defendant violated probation by engaging in new criminal activity. *Id.* The Government further asserts that Defendant had two warrants for his arrest for failure to appear at the time he was arrested for the instant offenses. *Id.* Additionally, the Government suggests that Defendant's history demonstrates an unwillingness to comply with prior probationary conditions. *Id.* The Government thus insists that Defendant's history and characteristics weigh heavily in favor of detention.

The Court also takes notice that Defendant seeks release to his Redford residence with Ms. Pettway and their children. Defendant reports that he has resided at this residence since July 1, 2016, which overlaps with the time frame in which he allegedly committed the underlying offenses. The Court thus questions the adequacy of Defendant's proposed release plan and the danger he poses to the community.

Finally, the Court acknowledges Defendant's COVID-19 diagnosis from December 2020. *See* ECF No. 17, PageID.55. According to the Government, Defendant's cellmate tested positive for COVID-19 on December 12, 2020. *See* ECF No. 22, PageID.109. Pursuant to protocol, "the corrections officers requested that Patton take a COVID-19 test to determine if he had contracted the virus." *Id.* However, the BOP medical records indicate that Defendant refused the COVID-19 test because he did not want the nasopharyngeal test. *See* ECF No. 23, PageID.120. Notwithstanding Patton's refusal to undergo the test, the Government reports that he

was immediately quarantined with other COVID-19-positive inmates and administered medication to address his symptoms. *See* ECF No. 22, PageID.110. Since then, Patton has purportedly been "deemed fully recovered" and removed from isolation as of January 5, 2021. *Id.*

The Court is heartened to hear of Defendant's recovery from COVID-19. The Court agrees, however, that his prior diagnosis is not grounds for his release on bond under the present facts. Thus, this third factor also weighs in favor of detention.

### 4. The Nature and Seriousness of the Danger Posed by Defendant's Release

The fourth and final factor demands that the Court consider "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(4). The Court must "look to more than whether or not the defendant himself has been guilty of physical violence," but also to the safety of the community as a whole. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). This includes the serious danger posed by drug trafficking activity. *See Stone*, 608 F.3d at 947 n.6.

The Court agrees with the Government that, even if Defendant could live with his long-time girlfriend, Defendant would still pose a danger to the community upon release. In his Motion, Defendant failed to identify how Ms. Patton, as a proposed third-party custodian, would dissuade him from engaging in criminal activity.

12

Further, the nature of Defendant's current alleged offenses demonstrates his repeated inability to comply with his requirements of probationary supervision.

Based on the foregoing considerations, the Court concludes that no conditions or combination of conditions will reasonably assure the safety of the community if Defendant were released on bond at this time.

## V. Conclusion

Accordingly, for the reasons articulated above, Defendant's Motion for Release on Bond [#17] is **DENIED**.

**IT IS SO ORDERED.**

s/Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: January 27, 2021

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 27, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

13